Kenneth HORODENSKI,
et al., Appellants,

v.

LYNDALE GREEN TOWNHOME
ASSOCIATION, INC.,
Respondent.

No. A11–289.

Court of Appeals of Minnesota.

Sept. 19, 2011.

Dean Vescera, Justin L. Seurer, Seurer Law Firm, Minnetonka, MN, for appellant.

David H. Oskie, Oskie, Reuter, Hamilton & Sofio, P.A., St. Paul, Minnesota; and Phaedra Howard, Hellmuth & Johnson, Edina, MN, for respondent.

Considered and decided by SCHELLHAS, Presiding Judge; PETERSON, Judge; and MINGE, Judge.

## OPINION

PETERSON, Judge.

This appeal from a summary judgment arises out of a dispute about the terms of a common interest community's declaration instrument. Appellant-unit owners assert that the district court erred by dismissing their declaratory-judgment claim and granting summary judgment for respondent-association on its claim for assessed attorney fees and by denying their motion to compel discovery. We affirm.

## FACTS

Respondent Lyndale Green Townhome Association, Inc. is the unit-owners' association responsible for the maintenance, upkeep, and management of a group of townhomes. Respondent was formed under the Minnesota Common Interest Ownership Act (MCIOA), now codified as Minn.Stat. §§ 515B.1–101 to .4–118 (2010), and is governed by a declaration, articles, bylaws, and other rules and regulations. Under the terms of the declaration, respondent is responsible for maintenance, repair, and replacement of common elements, which includes all of respondent's real and personal property; landscaping, watering, and maintenance of plantings, trees, and shrubs; paving, surfacing, and striping entrance roadways and driveways; and snowplowing and removing ice from common elements. Respondent is also responsible for exterior maintenance of townhomes, which includes painting and replacing roofs, gutters, downspouts, decks, garage doors (except hardware), and exterior siding and other building surfaces; and lawn, shrub, and tree maintenance for all townhomes. Townhome owners are otherwise responsible for maintenance of individual units.

Appellants Kenneth and Mary Ellen Horodenski own a townhome for which respondent is responsible, and their son lives in the townhome. The declaration provides that townhome owners are required to pay assessments for a share of common expenses. Under the declaration, the obligation to pay assessments is "absolute and unconditional," and an owner is not exempt from liability for payment by reason of any claim against respondent, and "no Owner may withhold any assessments payable to the Association ... as a measure to enforce such Owner's position." The declaration permits the assessment of fees, charges, late charges, fines, and interest under Minn.Stat. § 515B.2–116 (2010). The declaration also allows respondent to assess unit owners for attorney fees and costs incurred in connection with collecting assessments and enforcing the declaration.

For one to one and one-half years before October 2009, appellants and their son tried addressing repair and maintenance issues and other concerns with respondent and its property manager. On June 29, 2009, two members of respondent's board of directors met with appellants' son at appellants' townhome to discuss concerns about the townhome. On October 21, 2009, Kenneth Horodenski wrote respondent a letter listing three problems that needed to be fixed by respondent—a leaky mailbox, water runoff from the garage roof, and a depression at the end of the driveway. The letter also demanded reimbursement for two repairs paid for by appellants—a frozen heater vent pipe on the roof and damaged exterior lighting. The letter stated:

This letter contains a list of items which need immediate repair. To the exterior of our townhome in Lyndale Green. These items are [respondent's] responsibility for which some we have paid for since they were a hazard & had to be corrected immediately. We demand immediate reimbursement for repairs paid by us!!

Please note homeowners fees will no longer be paid by us (effective with Nov. 09 dues) until all repairs contained in this letter are completed to our satisfaction. We will forward back dues when repairs are completed & have no intent, nor will we pay any late penalty fees.

If [respondent] does not make referenced repairs in a timely manner we will have no choice but to proceed with a civil law suit.

Appellants withheld payment of their November and December 2009 dues.

In November 2009, respondent's attorney sent appellants a letter addressing the problems and repairs identified in appellants' letter. The letter stated that the post office had not noticed any leak or other condition that would account for the mailbox interior getting wet but that respondent would caulk around the mailbox to seal any possible cracks or holes. Regarding water running off the garage roof, the letter stated that respondent was responsible only for gutters and downspouts that were part of the original construction, that the builder had inspected the gutters on appellants' unit and found no deficiencies, and that respondent would have someone check the gutters and clear them of any debris that might be preventing proper drainage. The letter stated that appellants were responsible for driveway maintenance and repair but that respondent was willing to arrange for an inspection at appellants' expense. The letter stated that maintenance and repair of the heater vent pipe and exterior lighting were appellants' responsibility and, therefore, respondent would not reimburse appellants for those expenses.

The letter also stated:

Finally, I understand that you have threatened to withhold payment of your assessments unless or until the demanded repairs have been completed. Please be advised that pursuant to Section 6.5 of the Declaration, the obligation of an Owner to pay assessments is "absolute and unconditional." That section further sets forth that "No Owner is exempt from liability for payment of his or her share of common Expenses by right of set-off, by waiver of use or enjoyment of any part of the Property, by absence from or abandonment of the Unit . . . *or by reason of any claim against the Association or its officers, directors or agents, or for their failure to fulfill any duties under the Governing Documents or the Act.*" Declaration, Section 6.5 (emphasis added). Therefore, you are not entitled to withhold payment of assessments for any reason. If you fail to pay

your assessments in a timely manner, you will be subject to late fees and other collection action in accordance with [respondent's] governing documents just as any other delinquent Owner.

Pursuant to state law and Section 6.1(d) of the Declaration, [respondent] is entitled to assess against you and/or your Unit any expenses, including reasonable attorneys' fees and costs, incurred by [respondent] in connection with the enforcement of [respondent's] governing documents. Therefore, the cost to consult with [respondent] on this matter and to prepare this letter may be assessed by [respondent] against you and [your unit].

In a December 23, 2009, letter, respondent informed appellants that "[s]eeking legal counsel in connection with enforcing the Association's governing documents has created a cost to the Association that would not have occurred if it were not for your letter sent to the Board," and that $2,471, the amount of legal fees incurred, had been billed to appellants' account. The letter also described the late fees and other consequences that could follow a failure to pay monthly association dues. Appellants paid their November and December dues at the end of December 2009, together with their January 2010 dues.

In April 2010, appellants brought this action against respondent, seeking a declaratory judgment that the declaration did not allow respondent to collect attorney fees for preparation of the November 2009 letter or, alternatively, that an award of attorney fees against appellants would be unconscionable. Appellants also sought damages for breach of the duty of good faith, plus attorney fees under Minn.Stat. § 515B.4–116 (2010). Respondent counterclaimed against appellants, seeking a money judgment and a lien on appellants' townhome.

The parties filed cross-motions for summary judgment. Appellants also moved to compel discovery, if their motion for summary judgment was not granted. The district court dismissed appellants' complaint and denied their motion to compel discovery. The district court granted summary judgment for respondent on its counterclaim, concluding that, as a matter of law, appellants breached their contract with respondent by failing to pay dues and late charges on time and that respondent was entitled to recover those damages, plus attorney fees and costs. The district court directed respondent to submit an application for reasonable attorney fees and costs and allowed appellants the opportunity to respond. Respondent submitted a request for attorney fees in the amount of $15,247.50 and costs of $890.33. Appellants did not respond. The district court granted respondent the full amount of requested attorney fees and costs, and judgment was entered. This appeal followed.

## ISSUES

I. Did the district court err in dismissing appellants' complaint and granting respondent summary judgment for its attorney-fee assessment?

II. Did the district court err in denying appellants' motion to compel discovery?

## ANALYSIS

### I.

On appeal from a summary judgment, appellate courts review de novo whether a genuine issue of material fact exists and whether the district court erred in applying the law; in doing so, appellate courts view the evidence in the light most favorable to the party against whom summary judgment was granted. *Peterka v. Dennis,* 764 N.W.2d 829, 832 (Minn.2009). To survive a summary-judgment motion, the

nonmoving party must present "sufficient evidence to permit reasonable persons to draw different conclusions." *Schroeder v. St. Louis Cnty.*, 708 N.W.2d 497, 507 (Minn.2006) (emphasis omitted).

"Any person interested under a . . . contract . . . or whose rights, status, or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder." Minn.Stat. § 555.02 (2010).

 "Attorney fees are recoverable if specifically authorized by contract or statute." *Van Vickle v. C.W. Scheurer & Sons, Inc.*, 556 N.W.2d 238, 242 (Minn. App.1996), *review denied* (Minn. Mar. 18, 1997). Statutory construction and construction of an unambiguous contract are questions of law, which we review de novo. *Reider v. Anoka–Hennepin Sch. Dist. No. 11*, 728 N.W.2d 246, 249 (Minn.2007) (statute); *Brookfield Trade Ctr., Inc. v. Cnty. of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998) (contract); *see also Allen v. Burnet Realty, LLC*, 801 N.W.2d 153, 157 (Minn. 2011) (stating that whether a contract is ambiguous is a question of law). In both statutory and contract interpretation, unambiguous language must be accorded its plain and ordinary meaning. *Asian Women United of Minn. v. Leiendecker*, 789 N.W.2d 688, 691 (Minn.App.2010). Language that is not reasonably susceptible to more than one meaning is unambiguous. *Art Goebel, Inc. v. N. Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn.1997) (contract); *Thorson v. Billy Graham Evangelistic Ass'n*, 687 N.W.2d 652, 656 (Minn.App.2004) (statute), *review denied* (Minn. Dec. 22, 2004).

Unless prohibited by the declaration, reasonable attorneys fees and costs incurred by the association in connection with (i) the collection of assessments and, (ii) the enforcement of this chapter, the articles, bylaws, declaration, or rules and regulations, against a unit owner, may be assessed against the unit owner's unit.

Minn.Stat. § 515B.3–115(e)(4) (2010). The common interest community's declaration expressly incorporates this statutory right:

Reasonable attorneys' fees and other costs incurred by [respondent] in connection with (i) the collection of assessments and (ii) the enforcement of the Governing Documents, the Act, or the Rules and Regulations, against an Owner or Occupant or their guests, may be assessed against the Owner and the Owner's Unit.

Appellants do not dispute that this provision allows respondent to recover reasonable attorney fees incurred in enforcement of the declaration. Appellants argue that the November 2009 letter from respondent's attorney was not "an enforcement" against a unit owner and, therefore, respondent was not entitled to recover attorney fees charged for its preparation.

 Courts are bound by a statute "as written and may not supply by construction that which the legislature purposefully omits or inadvertently overlooks." *Leiendecker*, 789 N.W.2d at 693. Both Minn. Stat. § 515B.3–115(e)(4) and the declaration permit the recovery of attorney fees incurred "in connection with the collection of assessments" and "enforcement" of an association's declaration or rules and regulations. "Enforce" means "[t]o compel . . . obedience to." *The American Heritage Dictionary of the English Language* 610 (3d ed.1992). In turn, "obedience," is defined as "[t]he act of obeying," and "obey" is defined as "[t]o carry out or comply with." *Id.* At 1246. The November 2009 letter was written in connection with com-

pelling appellants to comply with their unconditional obligation to pay assessments, as required by the declaration. Accordingly, under the plain and ordinary meaning of the term "enforcement," the district court properly concluded that, as a matter of law, an assessment for attorney fees was permitted under Minn.Stat. § 515B.3–115(e)(4). Construing Minn.Stat. § 515B.3–115(e)(4) as requiring that a collection action be initiated before an attorney-fee award is permitted would add a limitation that is not contained in the statutory language. *Cf.* Minn.Stat. § 363A.33, subd. 7 (2010) (permitting attorney-fee award "[i]n any action or proceeding brought pursuant to this section").

■ Appellants argue that allowing respondent to recover attorney fees would give respondent an "absolute power to charge attorney fees for any question a homeowner asks the Board of Directors." But appellants did not simply ask a question of the board. Rather, appellants' October 2009 letter demanded repairs and reimbursement and stated that, if the repairs and reimbursement were not made, appellants would not pay their dues and would proceed with a lawsuit. The letter also stated that it had been written on the advice of an attorney. Because appellants' letter stated that it was written on the advice of an attorney and threatened a lawsuit against respondent, the district court properly concluded that, as a matter of law, it was reasonable for respondent to consult an attorney to respond to the letter.

Appellants argue that a factual determination is needed regarding the circumstances surrounding the November 2009 letter. But there is no fact issue regarding the content of appellants' October 2009 letter, which threatened to withhold homeowner fees and to proceed with a lawsuit, or the content of respondent's November 2009 letter, which responded by addressing enforcement of appellants' unconditional obligation to pay assessments.

■ Although there may have been an issue about the reasonableness of the fees assessed, respondent's application for attorney fees was supported by an affidavit and detailed billing statements and invoices, and appellants did not respond. "A district court's decision on the reasonableness of attorney fees is subject to review under an abuse-of-discretion standard." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 776 N.W.2d 172, 179 (Minn.App.2009). But error is not presumed on appeal, and the burden of showing error rests on the party asserting it. *Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975). Given the information supplied by respondent and the absence of a response by appellants, there is no basis for this court to conclude that the district court abused its discretion in determining that the requested attorney fees were reasonable.

## II.

■ "[T]he trial judge has wide discretion to issue discovery orders and, absent clear abuse of that discretion, normally its order with respect thereto will not be disturbed." *Shetka v. Kueppers, Kueppers, Von Feldt & Salmen*, 454 N.W.2d 916, 921 (Minn.1990). The district court denied appellants' motion to compel discovery as moot. Citing *Hasan v. McDonald's Corp.*, 377 N.W.2d 472, 473 (Minn.App.1985), appellants argue that the district court should have ruled on the merits of their motion to compel discovery before deciding the motions for summary judgment.

In *Hasan*, the appellant sued the respondents for negligence, and the respondents moved for summary judgment. *Id.* The appellant then moved to compel dis-

covery. *Id.* The district court granted summary judgment for the respondents and then dismissed the appellant's discovery motion as moot. *Id.* On appeal, this court stated that the test set forth in *Rice v. Perl,* 320 N.W.2d 407, 412 (Minn.1982), for granting a continuance of a summary-judgment motion in order to conduct discovery, applies to a motion to compel discovery made before a motion for summary judgment is considered. *Id.* at 475. This court stated that it would have been better practice for the district court to have conducted the *Rice* analysis on the appellant's discovery motion before deciding the summary-judgment motion, but, because the summary judgment was reversed on other grounds, this court did not decide whether the district court erred in ruling on the summary-judgment motion without first requiring responses to the appellant's outstanding discovery requests. *Id.*

■■■ Appellants fail to recognize two significant differences between the motion to compel discovery in *Hasan* and appellants' motion to compel discovery. Unlike the motion in *Hasan,* appellants' motion was made together with their own motion for summary judgment and sought to compel discovery if the district court did not grant them summary judgment. The district court considered the parties' cross-motions for summary judgment, and, after granting respondent's motion and denying appellants' motion, determined that appellants' motion to compel discovery was moot.

Appellants argue that they should be allowed discovery of the minutes for respondent's board-of-directors meetings because it is reasonable to believe that appellants' October 2009 letter would have been discussed at a board meeting and the minutes would be relevant to determining whether respondent breached its contractual obligation to act in good faith when it

failed to contact appellants and make the repairs it was required to make. Consequently, the issue before us with respect to appellants' motion to compel discovery is whether the district court erred in ruling as a matter of law that respondent acted in good faith. We conclude that the district court did not err.

The MCIOA provides that "[e]very contract or duty governed by this chapter imposes an obligation of good faith in its performance or enforcement." Minn.Stat. § 515B.1–113 (2010). The statute does not define "good faith," but the comment to the Uniform Common Interest Ownership Act, which is the model for the MCIOA, states that, as used in the act, good faith "means observance of two standards: 'honesty in fact', and observance of reasonable standards of fair dealing." Uniform Common Interest Ownership Act (1982)(U.L.A.) § 1–113 & cmt.

Appellants' claim that respondent did not act in good faith alleges that respondent negligently or intentionally failed to directly communicate with appellants and intentionally assessed attorney fees against appellants to intimidate or punish them. But appellants' October 2009 letter to respondent demanded repairs and reimbursement; stated that appellants were sending the letter on the advice of counsel; and threatened that if the repairs and reimbursement were not made, appellants would not pay their dues and would proceed with a lawsuit. Because appellants threatened a lawsuit against respondent and refused to pay their assessment fees as required under the declaration, the district court properly concluded that, as a matter of law, it was reasonable for respondent to consult with an attorney to respond to the letter, rather than directly communicating with appellants. Even if respondent could have directly communicated with appellants, when faced with a

threat of legal action over the terms of the declaration, it was reasonable to refer appellants' claims to an attorney. And, as we have already discussed, the declaration allowed respondent to assess appellants for the attorney fees incurred in connection with enforcing the declaration. *See Burgmeier v. Farm Credit Bank*, 499 N.W.2d 43, 50 (Minn.App.1993), *review denied* (Minn. July 15, 1993) (party to contract does not act in bad faith by asserting or enforcing its legal and contractual rights).

## DECISION

Because Minn.Stat. § 515B.3–115(e)(4) and the common interest community's declaration do not limit the recovery of attorney fees incurred "in connection with" the collection of assessments and enforcement of the declaration to fees incurred in a collection action, respondent could assess appellants for attorney fees incurred to respond to appellants' October 2009 letter. Because it was reasonable, as a matter of law, for respondent to consult with an attorney to respond to the October 2009 letter, the district court did not err in concluding that respondent acted in good faith and, therefore, granting respondent's motion for summary judgment, denying appellant's motion for summary judgment, and denying appellants' motion to compel discovery as moot.

**Affirmed.**